NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **OPINION** |
| v. | No. 2:15-cv-1264 (WHW) |
| $24,700 IN UNITED STATES CURRENCY, | |
| Defendant *in rem*. | |

**Walls, Senior District Judge**

In this civil asset forfeiture case, Plaintiff United States of America ("the Government") seeks to take possession of $24,700 in United States currency ("the Defendant property") allegedly linked to drug trafficking. The Government now moves for default judgment under Fed. R. Civ. P. 55(b), and for an order under 21 U.S.C. § 881, declaring the Defendant property forfeited. Would-be known claimant Derick Sanchez has not filed a claim under penalty of perjury within the time required by 18 U.S.C. § 983(a)(4) and Rule G(5)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

The Court finds that the Government has not met its evidentiary burden, failing to allege facts sufficient to demonstrate a nexus between the Defendant property and the trafficking of controlled substances. Decided without oral argument under Fed. R. Civ. P. 78, the Government's motion is denied.

## BACKGROUND

The complaint alleges: The United States Drug Enforcement Agency ("DEA") seized the Defendant property on or about September 30, 2014 from Derick Sanchez's carry-on luggage at Gate 31 of Newark Liberty International Airport in Elizabeth, New Jersey. Compl. ¶ 2. Acting on a tip from the New England DEA division, agents interviewed Sanchez at the gate before his flight to Los Angeles. *Id.* ¶¶ 7-8. Sanchez consented to questioning and a search of his carryon luggage. *Id.* ¶¶ 8-10. DEA agents found bundles of United States currency intermingled with clothing in Sanchez's carryon luggage. *Id.* ¶ 9. Sanchez stated that the luggage contained $20,000, but when shown the bundles, stated that the amount was actually $25,000. *Id.* ¶ 13.

Sanchez told the agents that he was traveling to Los Angeles to meet a friend and "hang out and go to the clubs." *Id.* ¶ 14. He was unable to provide his friend's address, or a hotel reservation. *Id.* ¶¶ 15, 18. He provided phone numbers to the agents that he claimed could be used to reach his friend, but when the agents called, they reached either an automated answering machine or individuals whom Sanchez did not name and who denied knowing Sanchez. *Id.* ¶¶ 15-17, 26-30.

Sanchez told the agents that he worked as a manager at a restaurant in the Bronx, but could not provide the restaurant's address. *Id.* ¶ 20. When Task Force officers visited the restaurant, both the manager and owner denied that Sanchez worked there, and neither recognized a photo of Sanchez. *Id.* ¶¶ 32-33. At the airport, Sanchez stated that he had not been arrested in 10 years. *Id.* ¶ 22. Further investigation revealed that Sanchez had multiple previous arrests for suspected possession, manufacturing and distribution of controlled substances. *Id.* ¶ 24. The most recent arrest was in 2013, for suspected possession of cocaine with intent to distribute. *Id.* ¶ 22. The complaint does not mention any convictions.

After concluding their interview with Sanchez at Newark Airport, the DEA agents seized the currency, placed it in an evidence bag in Sanchez's presence, and issued him a receipt. *Id.* ¶ 23. A K-9 unit deployed his narcotics detection dog to screen the currency, and the dog signaled that it detected a controlled substance on the currency. *Id.* ¶ 25.

On November 21, 2014, the DEA received a claim from an attorney representing Sanchez contesting the seizure of the Defendant property. Ex. A to Decl. of Peter W. Gaeta ("Gaeta Decl."), ECF No. 5-1. The Government filed a verified complaint for forfeiture in rem against the Defendant property on February 18, 2015, ECF No. 1, and a warrant for arrest in rem on the same day. ECF No. 2. On February 20, 2015, the Government filed a notice of publication for forfeiture, ECF No. 3, and sent a copy of the complaint and Notice of Forfeiture by certified mail, return receipt requested, to Sanchez via his attorney, Dennis McAlevy, Esq. Gaeta Decl. ¶¶ 5-6. Mr. McAlevy received the documents on March 2, 2015. *Id.* ¶ 6. Notice of Civil Forfeiture was posted on the Government's official forfeiture website, www.forfeiture.gov, for over 30 consecutive days, beginning on February 21, 2015. *Id.* ¶ 7; *id.* Ex. C. Neither Sanchez nor anyone else has filed a claim to the Defendant property in this proceeding under penalty of perjury, nor did anyone answer the verified complaint. The Government moved for default judgment on June 29, 2015, requesting an order under 21 U.S.C. § 881, declaring the Defendant property forfeited. ECF No. 5. The Clerk entered default the next day.

## STANDARD FOR DEFAULT JUDGMENT

When evaluating a motion for default judgment under Fed. R. Civ. P. 55, courts in the Third Circuit consider three factors: (1) whether there is prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d

3

Case 2:15-cv-01264-WHW   Document 6   Filed 08/05/15   Page 4 of 8 PageID: 40
NOT FOR PUBLICATION

Cir. 2000). A court must treat "the factual allegations in a complaint, other than those as to damages . . . as conceded by the defendant." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005). A court must also make "an independent inquiry into whether the unchallenged facts constitute a legitimate cause of action" and "must make an independent determination" regarding questions of law. *See Days Inn Worldwide, Inc. v. Mayu & Roshan, L.L.C.*, No. 06-1581, 2007 WL 1674485, at *4 (D.N.J. June 8, 2007) (citations omitted). Similarly, a court does not accept as true allegations pertaining to the amount of damages, and may employ various methods to ascertain the amount of damages due. While the court may conduct a hearing to determine the damages amount, Fed. R. Civ. P. 55(b)(2), a damages determination may be made without a hearing "as long as [the court] ensure[s] that there [is] a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997).

## DISCUSSION

### I.  Requirements for Civil Asset Forfeiture under 21 U.S.C. § 881(a)(6)

Under federal statute, the following is subject to forfeiture to the Government:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

21 U.S.C. § 881(a)(6). "Three elements must be present in order to subject a claimant's property to civil forfeiture pursuant to 21 U.S.C. § 881(a)(6): (1) the subject property must be moneys, negotiable instruments, securities, or other things of value; (2) there must be probable cause to believe that there exists illicit drug activity that renders the seized property subject to forfeiture; and (3) there must be probable cause to believe that a connection, or nexus, exists between the

seized property and the predicate drug activity the Government has identified." *United States v. Ten Thousand Seven Hundred Dollars & No Cents in U.S. Currency*, 258 F.3d 215, 222 (3d Cir. 2001). "[B]oth the illicit drug activity that renders the property subject to forfeiture and the currency's connection or nexus to it can be established by pointing to credible evidence establishing probable cause to believe that the property at issue either: (1) was furnished or intended to be furnished in exchange for a controlled substance; (2) constitutes proceeds traceable to a drug exchange; or (3) was used or intended to be used to facilitate a violation of federal drug laws." *Id.*

Civil asset forfeiture actions *in rem* are governed by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"), and 18 U.S.C. § 983. *See U.S. v. Technodyne LLC*, 753 F.3d 368, 379-81 (2d Cir. 2014). Under Rule G, the Government must satisfy certain requirements to properly bring a forfeiture action against a defendant *in rem*. First, the Government must file a verified complaint stating the grounds for venue and jurisdiction over the defendant property. *See* U.S.C. Admiralty and Maritime Claims R. G(2). The complaint must describe the property with reasonable particularity, state its location at the time of seizure and when the action was filed. *Id.* The Government must identify the statute under which the forfeiture action is brought. *Id.* And the complaint must state sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial. *Id.*

## II. The Complaint Does Not Sufficiently Demonstrate a Nexus Between the Defendant Currency and Narcotics Activity

The facts alleged here, which the Court accepts as true for purposes of a default judgment motion, *see DIRECTV, Inc.*, 431 F.3d at 165, include a series of false statements that Sanchez made to investigators about his activities, Sanchez's prior arrests for suspected drug-related

5

activity, the lack of an identified legitimate source for the $24,700 in cash, and a dog's detection of a controlled substance on the currency. *See* Compl. Under Third Circuit precedent, these allegations are insufficient to establish the probable cause required under § 881(a)(6).

The Third Circuit considered the sufficiency of a very similar set of facts in *U.S. v. $10,700.00*, 258 F.3d 215, 222 (3d Cir. 2001). There, the Government seized rubber-banded bundles of cash from a car, justifying the seizure by pointing to the claimants' past drug-related convictions and a dog's indication of the presence of drugs on the currency. *Id.* at 219-220. The claimants made inconsistent statements about their travel plans, engaged in allegedly "suspicious" activity such as avoiding eye contact with the questioning officer, and were traveling on an interstate highway with "some volume" of drug trafficking. *Id.* at 219. The District Court concluded that the Government met its burden of establishing probable cause to institute forfeiture proceedings against the currency under § 881(a)(6). *Id.* at 218. Reversing the District Court, the Third Circuit found that the allegations were insufficient to demonstrate a nexus between the currency and illegal drug activity. *Id.*

The Government's case suffers from the same fundamental flaw here. First, a dog's indication of the presence of drugs is not probative without evidence of the dog's training and reliability. As in *U.S. v. $10,700.00*, "the Government's evidence of the dog's positive alert to the currency is not probative of whether the money can be connected to a drug exchange, because the Government has not presented any evidence concerning this particular dog's past training and its degree of accuracy in detecting narcotics on currency." *U.S. v. $10,700.00*, 258 F.3d at 230; *see also United States v. Rivera*, 347 F. App'x 833, 838 (3d Cir. 2009) ("[i]n the context of drug-tainted money, [the Third Circuit has] required some showing of reliability and training" of the drug-sniffing dog.).

Nor is the currency's placement in rubber bands persuasive on its own as to a purported nexus with narcotics activity. *See United States v. U.S. Currency, $30,060.00*, 39 F.3d 1039, 1044 (9th Cir. 1994) (rejecting the Government's argument that drug dealers carry money in wrapped bundles and its statement that the amount involved was consistent with the cost of two kilograms of cocaine because the Government "provide[d] no authority for these contentions, which are, in any event, speculative").

If the would-be claimants' previous *convictions* were of little probative value in *$10,700.00*, there is even less suggestion of a drug nexus in Sanchez's previous *arrests*, the most recent of which was more than a year before the seizure. Compl. ¶ 22. The Third Circuit explained:

> As a matter of logic, circumstantial evidence implicating claimants in *recent* drug activities, such as, for example, evidence of claimants' contemporaneous affiliation with known drug traffickers, or claimants' possession of drugs or drug paraphernalia at the time of the seizure, would support the Government's theory that the money in claimants' possession is connected to illegal drug trafficking. If presented by the Government, such evidence would have provided a strong, albeit inferential, present link between claimants' currency and the drug trade, and would have provided a more compelling case for forfeiture under § 881(a)(6). Here, however, the Government does not dispute that [the officer] did not find drugs or drug paraphernalia in claimants' vehicle, and it does not point to any reliable evidence of a similar nature from which it can be inferred that claimants were involved in drug activities at or around the time the Government seized the currency and filed the forfeiture complaint.

*U.S. v. $10,700.00*, 258 F.3d at 224. A forfeiture action that recently came before this Court also provides an instructive contrast. In *U.S. v. $75,000 in United States Currency*, the Court granted default judgment in part based on a witness's statement that he had recently observed a large quantity of drugs in the would-be claimants' home, and knew one of the would-be claimants to be a drug dealer. *Id.*, No. 2:14-cv-7633 (WHW), Court's Op. of May 27, 2015 at 3, ECF No. 8. No such testimony or other evidence connecting the currency to drugs is present here. "[A]t best,

NOT FOR PUBLICATION

[the facts alleged] suggest involvement in some unspecified furtive activity; they do not indicate, more specifically, that claimants had engaged, or were about to engage, in a drug sale with this currency." *U.S. v. $10,700.00*, 258 F.3d at 227.

## CONCLUSION

The Government's motion for default judgment is denied.

DATE: 5 August 2015

Hon. William H. Walls
Senior United States District Judge