NOT FOR PUBLICATION                                                                                    CLOSE

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : **OPINION** |
| v. | : No. 2:15-cv-1264 (WHW) |
| $24,700 IN UNITED STATES CURRENCY, | : |
| Defendant *in rem*. | : |

**Walls, Senior District Judge**

In this civil asset forfeiture case, Plaintiff United States of America ("the Government") seeks to take possession of $24,700 in United States currency ("the Defendant property") allegedly linked to drug trafficking. After this Court denied a previous motion for default judgment under Fed. R. Civ. P. 55(b), and for an order under 21 U.S.C. § 881, declaring the Defendant property forfeited, the Government filed an amended complaint and now moves again for default judgment and an order declaring the property forfeited. Would-be known claimant Derick Sanchez has not filed a claim under penalty of perjury within the time required by 18 U.S.C. § 983(a)(4) and Rule G(5)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

The Court finds that the Government has met its burden to allege facts sufficient to demonstrate a nexus between the Defendant property and the trafficking of controlled substances. Decided without oral argument under Fed. R. Civ. P. 78, the Government's motion is granted.

1

## BACKGROUND

The amended complaint alleges: The United States Drug Enforcement Agency ("DEA") seized the Defendant property on or about September 30, 2014 from Derick Sanchez's carry-on luggage at Gate 31 of Newark Liberty International Airport in Elizabeth, New Jersey. Amended Compl., ECF No. 8 ¶ 2. Acting on a tip from the New England DEA division, agents interviewed Sanchez at the gate before his flight to Los Angeles. *Id.* ¶¶ 7-8. Sanchez consented to questioning and a search of his carryon luggage. *Id.* ¶¶ 8-10. DEA agents found bundles of United States currency intermingled with clothing in Sanchez's carryon luggage. *Id.* ¶ 9. Sanchez stated that the luggage contained $20,000, but when shown the bundles, stated that the amount was actually $25,000. *Id.* ¶ 13.

Sanchez told the agents that he was traveling to Los Angeles to meet a friend and "hang out and go to the clubs." *Id.* ¶ 14. He was unable to provide his friend's address, or a hotel reservation. *Id.* ¶¶ 15, 18. He provided phone numbers to the agents that he claimed could be used to reach his friend, but when the agents called, they reached either an automated answering machine or individuals whom Sanchez did not name and who denied knowing Sanchez. *Id.* ¶¶ 15-17, 31-35. Sanchez told the agents that he worked as a manager at a restaurant in the Bronx, but could not provide the restaurant's address. *Id.* ¶ 20. When Task Force officers visited the restaurant, both the manager and owner denied that Sanchez worked there, and neither recognized a photo of Sanchez. *Id.* ¶¶ 36-38.

At the airport, Sanchez stated that he had not been arrested in 10 years. *Id.* ¶ 22. Further investigation revealed that Sanchez had multiple previous arrests for suspected possession, manufacturing and distribution of controlled substances. *Id.* ¶ 24. The most recent arrest was on June 6, 2013, for suspected possession of cocaine with intent to distribute. *Id.* ¶ 22. Investigation

before the stop revealed that, on or about February 6, 2014, Sanchez had been indicted by the Bergen County Prosecutor's Office for possession of cocaine with intent to distribute in connection with the June 2013 arrest, a charge that was eventually dismissed without prejudice. *Id*. ¶ 23. Investigation also revealed that Sanchez's cellular phone number, (551) XXX-7900, was associated with four other DEA investigations. *Id*. ¶ 24. The complaint does not mention any convictions resulting from the arrests, indictment, or investigations.

After concluding their interview with Sanchez at Newark Airport, the DEA agents seized the currency, placed it in an evidence bag in Sanchez's presence, and issued him a receipt. *Id*. ¶ 23. A K-9 unit deployed a narcotics detection dog to screen the currency, and the dog signaled that it detected a controlled substance on the currency. *Id*. ¶ 25.

On November 21, 2014, the DEA received a claim from an attorney representing Sanchez contesting the seizure of the Defendant property. *Id*. ¶ 40; Ex. A to Decl. of Peter W. Gaeta ("Gaeta Decl."), ECF No. 11-1. The Government filed a verified complaint for forfeiture in rem against the Defendant property on February 18, 2015, ECF No. 1, and a warrant for arrest in rem on the same day. ECF No. 2. On February 20, 2015, the Government filed a notice of publication for forfeiture, ECF No. 3, and sent a copy of the complaint and Notice of Forfeiture by certified mail, return receipt requested, to Sanchez via his attorney, Dennis McAlevy, Esq. ECF No. 11 ¶ 42; Gaeta Decl. ¶ 5. Mr. McAlevy received the documents on March 2, 2015. ECF No. 11 ¶ 43; Gaeta Decl. ¶ 6. On or about April 10, 2015, the Government received correspondence from Mr. McAlevy stating, "We do not contest the forfeiture in connection with the above captioned matter." ECF No. 11 ¶ 44; Gaeta Decl. Ex. C, ECF No. 11-1. Notice of Civil Forfeiture was posted on the Government's official forfeiture website, www.forfeiture.gov, for over 30 consecutive days, beginning on February 21, 2015. Gaeta Decl. ¶8; Gaeta Decl. Ex. D, ECF No.

11-1. Neither Sanchez nor anyone else has filed a claim to the Defendant property in this proceeding under penalty of perjury, nor did anyone answer the verified complaint.

The Government moved for default judgment on June 29, 2015, requesting an order under 21 U.S.C. § 881, declaring the Defendant property forfeited. ECF No. 5. The Clerk entered default the next day. On August 5, 2015, this Court denied the Government's motion for default judgement, holding that the Government failed to "allege facts sufficient to demonstrate a nexus between the Defendant property and the trafficking of controlled substances." ECF No. 6 at 1. The Court held that the narcotics detection dog's "indication of the presence of drugs is not probative without evidence of the dog's training and reliability," *id.* at 6, that the currency's placement in rubber bands was not "persuasive on its own as to a purported nexus with narcotics activity," *id.* at 7, and that evidence of Sanchez's previous arrests was also of little probative value. *Id.*

The Government filed an amended complaint on November 16, 2015 repeating its allegations and including new allegations regarding (a) Sanchez's February 2014 indictment in Bergen County, ECF No. 8 ¶ 23, (b) the DEA's discovery that Sanchez's phone number was associated with four other DEA investigations, *id.* ¶ 24, and (c) the narcotics detection dog's training, qualifications, and seizure history. *Id.* ¶¶ 28-30. On December 23, 2015, the Government again moved for default judgment and a final order for forfeiture under Fed. R. Civ. P. 55(b) and 21 U.S.C. § 881. ECF No. 11.

## STANDARD FOR DEFAULT JUDGMENT

When evaluating a motion for default judgment under Fed. R. Civ. P. 55, courts in the Third Circuit consider three factors: (1) whether there is prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether

defendant's delay is due to culpable conduct. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). A court must treat "the factual allegations in a complaint, other than those as to damages . . . as conceded by the defendant." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005). A court must also make "an independent inquiry into whether the unchallenged facts constitute a legitimate cause of action" and "must make an independent determination" regarding questions of law. *See Days Inn Worldwide, Inc. v. Mayu & Roshan, L.L.C.*, No. 06-1581, 2007 WL 1674485, at *4 (D.N.J. June 8, 2007) (citations omitted). Similarly, a court does not accept as true allegations pertaining to the amount of damages, and may employ various methods to ascertain the amount of damages due. While the court may conduct a hearing to determine the damages amount, Fed. R. Civ. P. 55(b)(2), a damages determination may be made without a hearing "as long as [the court] ensure[s] that there [is] a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997).

## DISCUSSION

### I. Requirements for Civil Asset Forfeiture under 21 U.S.C. § 881(a)(6)

Under federal statute, the following is subject to forfeiture to the Government:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

21 U.S.C. § 881(a)(6). "Three elements must be present in order to subject a claimant's property to civil forfeiture pursuant to 21 U.S.C. § 881(a)(6): (1) the subject property must be moneys, negotiable instruments, securities, or other things of value; (2) there must be probable cause to believe that there exists illicit drug activity that renders the seized property subject to forfeiture;

5

and (3) there must be probable cause to believe that a connection, or nexus, exists between the seized property and the predicate drug activity the Government has identified." *United States v. Ten Thousand Seven Hundred Dollars & No Cents in U.S. Currency*, 258 F.3d 215, 222 (3d Cir. 2001). "[B]oth the illicit drug activity that renders the property subject to forfeiture and the currency's connection or nexus to it can be established by pointing to credible evidence establishing probable cause to believe that the property at issue either: (1) was furnished or intended to be furnished in exchange for a controlled substance; (2) constitutes proceeds traceable to a drug exchange; or (3) was used or intended to be used to facilitate a violation of federal drug laws." *Id.*

Civil asset forfeiture actions *in rem* are governed by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"), and 18 U.S.C. § 983. *See United States v. Technodyne LLC*, 753 F.3d 368, 379-81 (2d Cir. 2014). Under Rule G, the Government must satisfy certain requirements to properly bring a forfeiture action against a defendant *in rem*. First, the Government must file a verified complaint stating the grounds for venue and jurisdiction over the Defendant property. *See* U.S.C. Admiralty and Maritime Claims R. G(2). The complaint must describe the property with reasonable particularity, state its location at the time of seizure and when the action was filed. *Id.* The Government must identify the statute under which the forfeiture action is brought. *Id.* And the complaint must state sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial. *Id.*

## II. The Amended Complaint Sufficiently Demonstrates a Nexus Between the Defendant Currency and Narcotics Activity

The Court observes again that the facts of this case, like those in *U.S. v. $10,700.00*, "do not present the 'typical' forfeiture scenario . . . in which the claimants' property, real or personal,

can be linked to a narcotics violation because the property was seized as a consequence of a police investigation, arrest or conviction for an underlying drug crime." *U.S. v. $10,700.00*, 258 F.3d at 222.

Sanchez was not arrested for an underlying drug crime, completing his flight to Los Angeles after agents seized the Defendant property. ECF No. 8 ¶ 25. Instead, the Government attempts to demonstrate a nexus between the Defendant property and narcotics acitivity through circumstantial allegations, which the Court accepts as true for purposes of a default judgment motion, *see DIRECTV, Inc.*, 431 F.3d at 165. These allegations include a series of false statements that Sanchez made to investigators about his activities, Sanchez's prior arrests and indictment for suspected drug-related activity, the presence of his phone number in several DEA investigations, the lack of an identified legitimate source for the $24,700 in cash, and a narcotics detection dog's detection of a controlled substance on the currency. *See* ECF No. 8. On the Government's first motion for summary judgment, the Court held that these allegations, minus those regarding (a) Sanchez's February 2014 indictment in Bergen County, ECF No. 8 ¶ 23, (b) the DEA's discovery that Sanchez's phone number was associated with four other DEA investigations, *id.* ¶ 24, and (c) the narcotics detection dog's training, qualifications, and seizure history, *id.* ¶¶ 28-30, were insufficient to establish the probable cause required under § 881(a)(6). ECF No. 6. With the new allegations, the Government now establishes probable cause.

### A. The narcotics detection dog's positive alert

The Court denied the Government's first motion for default judgment in part because "a dog's indication of the presence of drugs is not probative without evidence of the dog's training and reliability." ECF No. 6 at 6 (citing *U.S. v. $10,700.00*, 258 F.3d at 230; *United States v.*

7

*Rivera*, 347 F. App'x 833, 838 (3d Cir. 2009) ("[i]n the context of drug-tainted money, [the Third Circuit has] required some showing of reliability and training" of the drug-sniffing dog.)).

In the amended complaint, the Government adds three paragraphs detailing the training, certification, and experience of Cedo, the narcotics detection dog, and his trainer. ECF No. 8 ¶¶ 28-30. Accepting the allegations as true, Cedo received a narcotics detection certificate on July 18, 2008 after being trained to detect the scents of marijuana, cocaine, heroin, ecstasy, and methamphetamine over the course of over 200 searches. *Id.* ¶ 28. After receiving certification, Cedo was trained to detect the "odor of a controlled dangerous controlled substance on currency." *Id.* Cedo has been evaluated and recertified on an annual basis since 2008, receiving a certification on April 2, 2014, approximately six months before the seizure of the Defendant property, and again on October 31, 2014, one month after the seizure. *Id.* ¶ 29. Over their career, Cedo and his trainer have made approximately 290 seizures of narcotics and currency, including 146 of currency. *Id.* ¶ 30. The Government does not make any specific allegations regarding Cedo's reliability, *see United States v. $215,300 in United States Currency*, 883 F.2d 417, 419 (9th Cir. 1989) (finding that government had probable cause for forfeiture where it relied on, among other things, "uncontradicted trial testimony establish[ing] that the particular police dog had an unblemished record for detecting narcotics"), but the dog's recertification before and after the seizure supports the inference that he is reliable, and Sanchez does not challenge his reliability.

Even if a dog is trained and reliable, the Third Circuit has "not yet considered the extent to which a positive canine alert on a bundle of money is probative in assessing the government's probable cause to forfeit that currency pursuant to § 881(a)(6) based on its connection to drug trafficking." *U.S. v. $10,700.00*, 258 F.3d at 229-30 (noting that the Sixth, Seventh, and Ninth

Circuits have "called into question the evidentiary significance of a positive reaction to currency in determining whether there is probable cause to forfeit the money in light of studies indicating that a large percentage of United States currency is contaminated with sufficient traces of drug residue to cause a canine to 'alert' to it."). The Third Circuit has, however, found that positive alerts by trained and reliable dogs have probative value when considering the validity of convictions and arrests. *See United States v. Carr*, 25 F.3d 1194, 1203 (3d Cir. 1994) (accepting proof of positive alert by "trained" dog as evidence supporting conviction); *United States v. Massac*, 867 F.2d 174, 176 (3d Cir. 1989) (holding that positive alert on defendant's luggage, "combined with the other known elements," supported probable cause to arrest, in part because District Court found that the dog "met the training and reliability requirements."). Given the Third Circuit's acceptance of the probative value of trained, reliable canine alerts in these contexts, the Court finds that Cedo's positive alert has some probative value here. *See also United States v. $124,700 in U.S. Currency*, 458 F.3d 822, 826 n.1 (8th Cir. 2006) (giving "slight" probative value to canine alert in forfeiture probable cause determination).

### B. Evidence of prior arrests and indictment

The amended complaint, like the first complaint, alleges that investigation before the stop revealed that Sanchez had been arrested four times for drug-related offenses, most recently on June 6, 2013. ECF No. 8 ¶¶ 22, 26. This Court held in its last opinion that, "[i]f the would-be claimants' previous *convictions* were of little probative value in *$10,700.00*, there is even less suggestion of a drug nexus in Sanchez's previous *arrests*, the most recent of which was more than a year before the seizure." ECF No. 6 at 7.

The amended complaint now also alleges that Sanchez was indicted for a drug-related offense in February 2014 in connection with the June 2013 arrest, nearly eight months before the

seizure of the Defendant property. ECF No. 8 ¶ 23. The indictment was dismissed without prejudice, though the Government does not state whether this occurred before or after the seizure. *Id.*

Even assuming that it had not yet been dismissed, the indictment is still not "circumstantial evidence implicating claimant[ ] in *recent* drug activities, such as, for example, evidence of claimant['s] contemporaneous affiliation with known drug traffickers, or claimant['s] possession of drugs or drug paraphernalia at the time of the seizure." *U.S. v. $10,700.00*, 258 F.3d at 224. Instead, the indictment and arrests both demonstrate, at most, that Sanchez "could be linked to the narcotics trade in the past," not that Sanchez "had engaged, or [was] about to engage, in a drug sale *with this currency*." *Id.* at 227, 233 (emphasis added). The Court finds that the indictment and arrests are of minimal probative value.

### C. Sanchez's phone number

The final new allegation in the amended complaint is that "DEA did a query of its NADDIS database regarding Sanchez's cell phone. Investigation revealed that Sanchez's cell number, (551) XXX-7900, was associated with four other DEA investigations." ECF No. 6 ¶ 24. Though the Government does not explain the specific nature of these investigations or the suspected role of Sanchez or his cell phone number, this evidence provides a greater "temporal link to the drug trade," *U.S. v. $10,700.00*, 258 F.3d at 233, than Sanchez's past arrests and indictment. In another recent forfeiture action, this Court found that "a witness's sighting of marijuana in [claimant's] apartment shortly before the seizure" was probative. *United States v. $75,000 in U.S. Currency*, 2015 WL 3409468, at *4 (D.N.J. May 27, 2015) (Walls, J.). Though a phone number's association with DEA investigations is not nearly as strong a connection to

narcotics activity as the actual sighting of marijuana, both are at least probative of a connection with current or recent activity.

### D. Additional allegations

The Government repeats several other allegations from the initial complaint: that agents found the Defendant property comingled in clothing inside Sanchez's carryon, held together by rubber bands, ECF No. 8 ¶¶ 10-11; that "money couriers usually attempt to hide currency in clothing to avoid detection," *id.* ¶ 12; that Sanchez made false statements about his destination, contacts, and work, *id.* ¶¶ 14-21, 31-39; and that Sanchez stated that he was going to spend the Defendant property in Los Angeles at clubs. *Id.* ¶ 14.

The Court repeats its previous holding that the Defendant currency's placement in rubber bands is not persuasive on its own as to a purported nexus with narcotics activity. ECF No. 6 at 7 (citing *United States v. U.S. Currency, $30,060.00*, 39 F.3d 1039, 1044 (9th Cir. 1994) (rejecting the Government's argument that drug dealers carry money in wrapped bundles and its statement that the amount involved was consistent with the cost of two kilograms of cocaine because the Government "provide[d] no authority for these contentions, which are, in any event, speculative")). Nor is it persuasive that the Defendant currency was comingled in clothing inside Sanchez's carryon. *See U.S. v. $10,700*, 258 F.3d at 232-33 (not probative that currency was "rubber-banded in large bundles and concealed in baggage") (citing *United States v. One Lot of U.S. Currency ($36,634)*, 103 F.3d 1048, 1055 (1st Cir. 1997), *superseded by statute, as recognized in United States v. Lopez-Burgos*, 435 F.3d 1 (1st Cir. 2006) (finding "little significance" in the fact that cash was "concealed" because "[f]ew people carry any money, especially large sums, in any way other than 'concealed.'")). Sanchez's false statements to agents

11

and lack of an identified legitimate source for the Defendant currency, however, are both probative. *See U.S. v. $75,000*, 2015 WL 3409468, at *4.

### E. Totality of the circumstances

Each of the allegations in the amended complaint, on its own, is insufficient to establish probable cause that Sanchez had committed, or was about to commit, a drug-related offense and that the defendant currency was connected to that drug activity. But considering the "probative force of the credible evidence in its totality," *U.S. v. $10,700.00*, 258 F.3d at 234, including the positive alert by a trained, experienced K-9 unit, the presence of Sanchez's phone number in other DEA investigations, Sanchez's false statements to DEA agents, and the lack of an identified legitimate source for the Defendant currency, the Court finds that the Government has presented sufficient facts – all uncontested by Sanchez – to warrant a reasonable belief that the currency was connected to illicit drug activities.

## CONCLUSION

The Government's motion for default judgment is granted. An appropriate order follows.

DATE: 15 January 2016

Hon. William H. Walls
Senior United States District Judge